## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Kwmane Brosia, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| Richland County; Crayman Harvey, in his | ) | C/A No: |
| individual and official capacities; | ) | |
| FNU Medlock, John Roe Detention | ) | |
| Lieutenant, and John Doe Detention Officer in | ) | |
| their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Kwmane Brosia, by and through his undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Richland County, Crayman Harvey and FNU Medlock, John Roe Detention Lieutenant, and John Doe Detention Officer (collectively hereinafter "the Individual Defendants"), as well as a Tort Claims Act action pursuant to S.C. Code Ann. § 15-78-10, *et seq.*, for gross negligence against Richland County.

### PARTIES

1.      Kwmane Brosia (hereinafter "Mr. Brosia") is a citizen of South Carolina and resides in Richland County.

2.      Richland County (hereinafter "Defendant Richland County" or "Richland County") is a county in South Carolina which owns and operates the Alvin S. Glenn Detention Center ("ASGDC").

3.      Upon information and belief, Defendant Crayman Harvey (hereinafter "Defendant Harvey") is a citizen of South Carolina and resides in Richland County, South Carolina, and was the Director or Interim Director of the ASGDC in Richland County and was acting under color of

state law at all times relevant to this Complaint. He is being sued in both his individual and official capacities.

4.     Upon information and belief, Defendant FNU Medlock (hereinafter "Defendant Medlock") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

5.     Upon information and belief, Defendant John Roe Detention Lieutenant (hereinafter "Defendant Roe") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint.

6.     Upon information and belief, Defendant John Doe Detention Officer (hereinafter "Defendant Doe") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a detention officer at the ASGDC and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over the federal claims against Defendants pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

8.     This Court has supplemental jurisdiction over the state claims against Defendants pursuant to 28 U.S.C. § 1367 because those claims arise under the same facts as those over which the Court has original jurisdiction as described in the preceding paragraph.

9.     This Court further has personal jurisdiction over all Defendants as they reside in this District and their acts and/or omissions complained of occurred within this District.

10.     Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as the Defendants reside in Richland County and the acts or omissions complained of occurred within Richland County.

11.     Mr. Brosia was released from the ASGDC on August 22, 2024, but had no meaningful opportunity to seek administrative remedies during his detention as both paper grievance forms and kiosk reporting options were unavailable or disabled during Mr. Brosia's detention.

## FACTUAL ALLEGATIONS

12.     On November 15, 2022, Mr. Brosia was arrested and booked into the ASGDC.

13.     Richland County routinely short staffed the ASGDC of detention officers and personnel with such severity that it adversely affected servicing the detainee population throughout the jail.

14.     Richland County continues to understaff the jail notwithstanding its knowledge that detainees are assaulting other detainees on a regular basis. These assaults include stabbings like the ones suffered by Mr. Brosia.

15.     Upon information and belief, Defendant Richland County and the Individual Defendants had knowledge of stabbings occurring in the ASGDC perpetrated by detainees with contraband weapons.

16.     Upon information and belief, Defendant Richland County and the Individual Defendants had knowledge that cell doors did not safely lock and that detainees could access each other's cells.

17.     Further, upon information and belief, Defendant Richland County and the Individual Defendants had knowledge that detainees were making weapons out of the light fixtures.

18.     Notwithstanding this knowledge, Defendant Richland County and the Individual Defendants reduced the number of searches known as "shakedowns" instead of increasing them because of the increased violence in the detention center with these homemade weapons that are considered contraband.

19.     However, upon information and belief, Defendants routinely failed to search detainees for contraband weapons, which Defendants had reason to believe were frequently smuggled into the facility by employees or fashioned within the ASGDC by detainees.

20.     On or about December 6, 2022, Mr. Brosia was being housed in H "Hotel" Dorm. Mr. Brosia repeatedly told detention officers, including FNU Bonaparte, that he was being harassed by another group of detainees, that he believed something bad was going to happen to him, and that he was scared.

21.     Mr. Brosia told Bonaparte that he had no way to defend himself against attacks Mr. Brosia felt were imminent and therefore needed to be moved.

22.     Upon information and belief, FNU Bonaparte called Defendant Lieutenant Roe to discuss Mr. Brosia's safety concerns.

23.     Upon information and belief, Defendant Lieutenant Roe informed FNU Bonaparte that he or she was not concerned with Mr. Brosia's fears or complaints at that time.

24.     Mr. Brosia additionally asked other detention officers to be relocated from H dorm, and he further called his family asking them to intervene and have him removed from H dorm.

25.     Mr. Brosia's mother Yolanda Brosia and his pastor, Denise Kunce, both made calls to the detention center raising concerns about Mr. Brosia's safety.

26.     However, despite Mr. Brosia and his family raising concerns to and pleading with the detention staff, no detention officer made any effort to have Mr. Brosia relocated or to otherwise address his concerns.

27.     On December 6, 2022, Mr. Brosia was alone in cell #47, on the top tier of the H Dorm.

28.     At the same time, Defendant Medlock was standing at the door of the H Dorm's sally port.

29.     Upon information and belief, no other detainee was supposed to be in cell #47 with Mr. Brosia.

30.     However, Mr. Brosia noticed six (6) to seven (7) detainees running toward him.

31.     Defendant Medlock did not intervene as these detainees approached Mr. Brosia's cell.

32.     Upon entering the cell, the detainees began savagely beating Mr. Brosia.

33.     The detainees took turns beating Mr. Brosia until Mr. Brosia passed out. When he awakened, Mr. Brosia then heard the detainees indicate they were going to take turns beating him again. The detainees then proceeded to beat Mr. Brosia again until Mr. Brosia lost consciousness a second time.

34.     Mr. Brosia was yelling for help at various points of consciousness throughout the assault, but Defendant Medlock never intervened or otherwise attempted to help Mr. Brosia.

35.     Following the assault, Mr. Brosia woke up in the hospital.

36.     Mr. Brosia had lacerations to his right forehead and upper cheek and swelling and bruising of both eyes.  Mr. Brosia was diagnosed with a concussion, traumatic iritis, and a nasal bone fracture.

37.     Mr. Brosia was thereafter returned to the ASGDC where he began complaining of back pain and headaches, and displaying confusion.

38.     Shortly thereafter, Mr. Brosia was sent back to the hospital where he was diagnosed with a transverse L3 fracture and post-concussive syndrome.

39.     After Mr. Brosia again returned to the ASGDC, he was wheelchair bound, requiring same to assist with ambulation.  Mr. Brosia also suffers with pinching nerve pain at all times.

40.     Despite his medical needs, ASGDC staff have placed further burdens on Mr. Brosia as it relates to his medical issues.

41.     Mr. Brosia requested a back brace for the pain he experienced in his lower back, but the ASGDC never provided Mr. Brosia with the brace.

42.     ASGDC staff further failed to take Mr. Brosia to any of his follow-up appointments or to make accommodations for Mr. Brosia to attend or participate in physical therapy.

43.     As a result of Mr. Brosia's injuries, he is now unable to control his blader or bowels and must wear adult diapers.

44.     ASGDC staff failed to provide Mr. Brosia with any type of hygiene assistance, as Mr. Brosia was expected to clean himself and change his own diapers.

45.     In January 2024, Mr. Brosia was being housed in the B "Bravo" Dorm.

46.     On a day in January 2024, a detainee was stealing canteen from people in the B dorm and approached Mr. Brosia to steal his canteen.

47.     Mr. Brosia told the detainee he would just give him his canteen.

6

48.     However, the detainee got upset and followed Mr. Brosia, stabbing him seven (7) times in the back and four (4) times in the hand with a sharp metal object.

49.     Mr. Brosia was transported to the hospital where he received stitches in his hand and fluids.

50.     In June 2024, Mr. Brosia was still being housed in B Dorm.

51.     On a day in June 2024, Mr. Brosia went to the janitor's closet to brush his teeth.

52.     Upon information and belief, Defendant Doe was assigned to supervise B Dorm.

53.     Upon information and belief, there was no detention officer present in B Dorm at the time Mr. Brosia was attacked.

54.     Upon information and belief, Mr. Brosia had to use the water spigot in the janitor's closet to access clean water because the restroom in B dorm did not have clean running water.

55.     Upon entering the janitor's closet, Mr. Brosia found a detainee smoking.

56.     The detainee got upset that Mr. Brosia opened the door and let the smoke out, and an altercation ensued.

57.     However, when the detainee reached for a knife, Mr. Brosia attempted to retreat, but the detainee stabbed him three (3) times in the right shoulder.

58.     Following the assault, Mr. Brosia was not taken to the hospital, but his wounds were cleaned and he was given several shots.

59.     Detention officers thereafter performed a "shake down" of the detainee's cell in B Dorm after the assault and found three (3) knives.

60.     Following this attack, Mr. Brosia remained in B Dorm.

61.     While in B Dorm, Mr. Brosia noticed that there was only one working toilet for fifty (50) detainees.

62.     Mr. Brosia further noticed that there was rarely a detention officer present in B dorm.

63.     However, Mr. Brosia also noticed that the ASGDC was mixing "keep aways" back into B Dorm and failing to separate people that were supposed to be housed separately, resulting in multiple detainees being jumped.

64.     At some point during his time at the ASGDC, Mr. Brosia requested a kosher diet for religious purposes.

65.     Mr. Brosia's weight has since dropped from approximately 170 lbs to 136 lbs because he is only being provided with Ensure drinks and peanut butter sandwiches.

**FOR A FIRST CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment)**
**(*against Defendants Medlock, Roe and Doe*)**

66.     Mr. Brosia repeats and realleges the factual allegations contained in Paragraphs 1-65 as if fully restated herein.

67.     Defendants Medlock, Roe and Doe have an affirmative duty to provide for the basic needs of persons, including safety and treatment for serious medical needs to individuals in his custody and care, including Mr. Brosia.

68.     Defendants Medlock, Roe and Doe had knowledge of a significant number of assaults at ASGDC and still failed to take efforts to ensure Mr. Brosia's safety.

69.     Even with this knowledge, Defendant Medlock did not adequately supervise the H Dorm, did not preclude the detainees from entering the cell with Mr. Brosia, and failed to intervene as the detainees took turns beating Mr. Brosia repeatedly and Mr. Brosia screamed for help.

70.     Even with this knowledge, Defendant Doe did not adequately supervise the B Dorm, and failed to intervene as Mr. Brosia was attacked by another detainee in the janitor's closet.

8

71.    Defendants Medlock, Roe and Doe had knowledge of the significant risks associated with allowing a detainee to be savagely beaten by other detainees and failing to prevent or intervene in such an attack.

72.    Mr. Brosia was in his cell in H dorm when he was rushed and attacked by six or seven other detainees.  Mr. Brosia relied on Defendant Medlock to intervene in the assault, but Defendant Medlock stood by the sally port door throughout the incident.

73.    Mr. Brosia was brushing his teeth in the janitor's closet of B dorm when he was attacked by another detainee.  Mr. Brosia relied on Defendant Doe to intervene in the assault, but Defendant Doe left B dorm unattended and therefore did not intervene in the assault.

74.    The conduct and actions of Defendant Medlock, in failing to supervise the H Dorm, failing to preclude detainees from entering Mr. Brosia's cell, and failing to intervene in the assault against Mr. Brosia were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Mr. Brosia's basic human needs, and caused needless injury and suffering.

75.    The conduct and actions of Defendant Doe, in failing to supervise the B Dorm, and failing to intervene in the assault against Mr. Brosia were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Mr. Brosia's basic human needs, and caused needless injury and suffering.

76.    Defendants Medlock, Roe and Doe's conduct was objectively and subjectively unreasonable.

77.    Defendants Medlock, Roe and Doe's deliberate indifference was the cause in fact and proximate cause of Mr. Brosia's injuries.

78.     These failures constitute violations of Mr. Brosia's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

79.     Defendants Medlock, Roe and Doe are liable to Mr. Brosia for his injuries, pain, and suffering.

**FOR A SECOND CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment and**
<u>**Monell v. Department of Social Services of City of New York**</u>**)**
**(*against Defendant Richland County and Defendant Harvey*)**

80.     Mr. Brosia repeats and realleges the factual allegations contained in Paragraphs 1-79 as if fully restated herein.

81.     Defendant Richland County and Defendant Harvey had an affirmative duty to provide basic needs including safety, adequate food, sanitary conditions, and access to medical care to individuals in its custody and care, including Mr. Brosia.

82.     Mr. Brosia and Defendants were aware of numerous other assaults and stabbings at ASGDC before Mr. Brosia was assaulted and before he was stabbed on two separate occasions.

83.     Notwithstanding their knowledge of these numerous and frequent assaults and stabbings, Defendants still chose to understaff the ASGDC and allow units to be left unsupervised.

84.     The facts as stated above, as well as numerous other similar incidents, demonstrate a pattern and practice by the Defendants of understaffing the ASGDC such that detainees are routinely unsupervised, exposed to harm from violent detainees, and routinely attacked without intervention from detention center staff.

85.     At the time of his first attack, Mr. Brosia was in his cell when he was rushed and attacked by six or seven other detainees.  Mr. Brosia relied on Defendant Medlock to intervene in

the assault, but Defendant Medlock stood by the sally port door throughout the incident and did not intervene or otherwise attempt to assist Mr. Brosia, a practice which, upon information and belief, is commonplace due to chronic overcrowding and understaffing at the ASGDC.

86. At the time of Mr. Brosia's second attack, he was in B Dorm as another detainee went around stealing canteen from people. Mr. Brosia told the detainee that he could have his canteen but the detainee nonetheless stabbed Mr. Brosia repeatedly. Upon information and belief, the detainee was able to steal others' canteen and stab Mr. Brosia because B Dorm was unsupervised, a practice which is commonplace due to chronic overcrowding and understaffing at the ASGDC.

87. At the time of Mr. Brosia's third attack, he was in B Dorm and entering the janitor's closet to brush his teeth when he stumbled upon another detainee smoking. The detainee became upset and ultimately stabbed Mr. Brosia. Upon information and belief, the detainee was able to smoke in the janitor's closet and stab Mr. Brosia because B Dorm was unsupervised, a practice which is commonplace due to chronic overcrowding and understaffing at the ASGDC.

88. Notwithstanding Defendants' knowledge that detainees could pose a threat to other detainees, Defendants left detainees unsupervised and allowed detainees to assault other detainees, such as Mr. Brosia, without intervention.

89. Further, upon information and belief, Defendants failed to appropriately staff the ASGDC or to properly supervise said staff to prevent detainees from being attacked, to adequately respond to detainees' who raise concerns about their safety, to maintain staffing which would enable detention staff to adequately intervene when Mr. Brosia was assaulted on three different occasions, and to maintain staffing which would enable detention staff to adequately supervise

detainees to prevent scenarios leading to violence, such as detainees stealing other's canteen or smoking in the janitor's closet and restrooms.

90.    Upon information and belief, Defendant Richland County and Defendant Harvey engaged in a pattern and practice of failing to perform appropriate inspections of detainees, detainee cells, and common areas to discover contraband weapons, despite Defendants' explicit knowledge that detainees possess weapons that are used to perpetrate significant harm upon detainees such as Mr. Brosia.

91.    Mr. Brosia and Defendant were also aware of numerous other instances of detention staff providing detainees with inadequate food or unsanitary living conditions.

92.    Notwithstanding knowledge of these customs and practices, Defendant Richland County took no action to provide detainees with sanitary conditions and working restroom facilities, and further failed to provide Mr. Brosia with food that was sufficient to meet his nutritional needs.

93.    The facts as stated above demonstrate Defendant Richland County's pattern and practice of understaffing its facility such that detainees are routinely housed in unsanitary conditions with facilities in disrepair, and are not provided with adequate food.

94.    The conduct and actions of Defendants, acting under color of state law, in failing to adequately supervise detainees, failing to respond to Mr. Brosia raising concerns about his safety, failing to prevent Mr. Brosia from being assaulted, failing to intervene as Mr. Brosia was assaulted on three different occasions, and failing to provide Mr. Brosia with timely health care for serious medical needs were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Mr. Brosia's basic human needs and serious medical needs, and caused injury and suffering.

95. Defendant Richland County and Defendant Harvey's conduct was objectively and subjectively unreasonable.

96. Defendant Richland County and Defendant Harvey's patterns and practices constituted deliberate indifference and were the cause in fact and proximate cause of Mr. Brosia's injuries.

97. These failures constitute violations of Mr. Brosia's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

98. Defendant Richland County and Defendant Harvey are liable to Mr. Brosia based upon these improper practices.

**FOR A THIRD CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment)**
**(*against Defendant Medlock*)**

99. Mr. Brosia repeats and realleges the factual allegations contained in Paragraphs 1-98 as if fully restated herein.

100. Defendant Medlock had an affirmative duty to provide Mr. Brosia with adequate medical care for serious medical needs during his confinement.

101. The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference to Mr. Brosia's serious medical needs in violation of the Fourteenth Amendment.

102. The conduct and actions of Defendant Medlock, acting under color of state law, in failing to provide Mr. Brosia access to adequate medical care for serious medical needs were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Mr. Brosia's basic human needs, and caused needless injury and suffering.

103.    Defendant Medlock's conduct was objectively and subjectively unreasonable.

104.    Defendant Medlock's deliberate indifference was the cause in fact and proximate cause of Mr. Brosia's injuries.

105.    Defendant Medlock's deliberate indifference to Mr. Brosia's serious medical needs constitutes a violation of Mr. Brosia's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

106.    Defendant Medlock is liable to Mr. Brosia for this deprivation of rights.

**FOR A FOURTH CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment and**
**<u>Monell v. Department of Social Services of City of New York</u>)**
**(*against Defendant Richland County and Defendant Harvey*)**

107.    Mr. Brosia repeats and realleges the factual allegations contained in Paragraphs 1-106 as if fully restated herein.

108.    Defendant Richland County and Defendant Harvey had an affirmative duty to provide Mr. Brosia with adequate medical care for his serious medical needs during his confinement.

109.    Upon information and belief, numerous other detainees at the ASGDC have experienced a failure by Defendant Richland County and Defendant Harvey to adequately provide for medical care in deliberate indifference to other individuals' serious medical needs. In failing to staff the Detention Center, Defendants engaged in a pattern and practice of failing to provide appropriate medical care for serious medical needs.

110.    The facts of this case, and other known incidents, demonstrate a deliberate indifference to Mr. Brosia's serious medical needs in violation of the Fourteenth Amendment.

111.    The facts as stated in the above-referenced paragraphs demonstrate a pattern and practice by Defendant Richland County and Defendant Harvey of understaffing the ASGDC such that detainees such as Mr. Brosia are routinely prevented from being examined by medical staff and from being sent for outside medical care when necessary for serious medical needs.

112.    The conduct and actions of Defendants, acting under color of state law, in failing to provide Mr. Brosia access to adequate medical care constitutes deliberate indifference and/or reckless disregard for Mr. Brosia's serious medical needs, and caused needless suffering and further injury.

113.    Defendant Richland County and Defendant Harvey's conduct was objectively and subjectively unreasonable.

114.    Defendant Richland County and Defendant Harvey's deliberate indifference was the cause in fact and proximate cause of Mr. Brosia's injuries.

115.    This failure to provide Mr. Brosia access to adequate medical care constitutes a violation of Mr. Brosia's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

116.    Defendant Richland County and Defendant Harvey are liable to Mr. Brosia for this deprivation of his Constitutional rights.

## FOR A FIFTH CAUSE OF ACTION
### (Gross Negligence)
### *(against Defendant Richland County)*

117.    Mr. Brosia repeats and realleges the factual allegations contained in Paragraphs 1-116 as if fully restated herein.

118.    This is an action for gross negligence brought against Defendant Richland County under the laws of the State of South Carolina.

119.    This cause of action is brought pursuant to the South Carolina Tort Claims Act, S.C. Code §§15-78-10, *et seq.*

120.    At all times relevant to this complaint, the Individual Defendants and other detention staff at the ASGDC were employees and/or agents of Defendant Richland County, which funds the ASGDC and manages it pursuant to authority vested in it by the Richland County Sheriff[1], and were acting within the course and scope of their employment, in furtherance of the interests of Defendant Richland County, and with Richland County's knowledge and consent.

121.    Defendant Richland County is liable for the actions and omissions of its employees and/or agents that gave rise to this action including the actions and omissions of the Individual Defendants.

122.    Defendant Richland County by and through its employees and agents, owed a duty to Mr. Brosia, including the special duty to him while in their custody to act in a prudent and reasonable manner with regard to his health and safety in the following particulars, to wit:

    a.  to properly staff its facility;

    b.  to ensure staff supervision of detainees;

    c.  to confine detainees in accordance with guidelines to ensure their safety and security;

    d.  to prevent attacks by other detainees;

    e.  to enforce its own policies with respect to the possession of contraband and the search for and removal thereof;

    f.  to intervene during attacks on their premises; and

    g.  to promptly provide adequate medical care for serious medical needs.

---

[1] S.C. Code Ann. § 24-5-10, *et seq.*

16

123.    Defendant Richland County also owed ministerial duties in the following particulars, to wit:

a.  to provide responsible and effective operations of the ASGDC;

b.  to establish proper policies, customs, and regulations of the ASGDC;

c.  to supervise its detention staff;

d.  to properly train and retrain said staff;

e.  to discipline said staff and only retain those persons fit for duty; and

f.  to properly correct and remediate any known deficiencies within its staff or within the ASGDC.

124.    Upon information and belief, prior to the incident involving Mr. Brosia, Defendant Richland County had customs or policies of the following, which upon information and belief still exist at this time:

a.  understaffing the ASGDC;

b.  failing to screen detainees for contraband or jail-fashioned weapons;

c.  failing to adequately supervise detainees;

d.  leaving detainees who are attacked to fend for themselves;

e.  failing to provide prompt and adequate medical care for serious medical needs; and

f.  failing to properly train, retrain, supervise, and discipline detention staff including the Individual Defendants.

125.    The aforementioned failures amounted to violations of non-discretionary and non-delegable duties owed to detainees of ASGDC including Mr. Brosia.

126.    As such, Defendant Richland County breached its duties including ministerial duties owed to Mr. Brosia.

17

127.    Defendant Richland County's failure to reprimand and intervene and/or take corrective action against its corrections staff or within the ASGDC is evidence that Defendant Richland County ratified and promulgated staff misconduct and the conditions inside the ASGDC, and provides further evidence of its breach of duties owed to detainees housed at the ASGDC, including Mr. Brosia.

128.    Upon information and belief, in the years prior to the incident involving Mr. Brosia, despite knowledge of weapons within the ASGDC and violence between detainees, Defendant Richland County never reviewed, or formally amended training and/or policies and/or disciplinary measures and/or supervision techniques to eradicate or even mitigate the threat posed by violent detainees.

129.    Defendant Richland County's continued and repeated failures as described herein resulted in the Individual Defendants breaching the duty they owed by showing an absence of care and/or willfully, wantonly, and recklessly disregarding the life and bodily integrity of Mr. Brosia by failing to address Mr. Brosia's concerns regarding his imminent attack, failing to supervise detainees, failing to intervene when Mr. Brosia was attacked on multiple occasions, leaving Mr. Brosia to fend for himself when he was attacked, failing to timely provide Mr. Brosia with adequate medical attention to treat his injuries, failing to provide Mr. Brosia with adequate food, and failing to house Mr. Brosia in a dorm with clean running water or enough functional toilets to accommodate all of the detainees.

130.    Defendant Richland County knew or should have known of the dangers posed by its failures illustrated in this Complaint, and that said actions and inactions were reckless and or constituted the total absence of care likely to result in violations of a detainee's rights, and as such were reasonably foreseeable.

131.    Defendant Richland County, by and through its duly authorized employees, owed a duty to Mr. Brosia to be reasonable in the management and conduct of the ASGDC.

132.    Defendant Richland County, by and through the Individual Defendants, breached duties owed to Mr. Brosia by failing to search or screen Mr. Brosia's attackers and to ensure that they did not have access to contraband weapons, failing to address Mr. Brosia's concerns regarding his imminent attack, failing to intervene when Mr. Brosia was attacked on multiple occasions, failing to supervise detainees, leaving Mr. Brosia to fend for himself as he was violently attacked, failing to provide Mr. Brosia with prompt and adequate medical care for his serious medical needs, failing to provide Mr. Brosia with adequate food, and failing to house Mr. Brosia in a dorm with clean running water and enough functional toilets to accommodate all of the detainees.

133.    Each act or omission detailed in this matter constitutes a separate occurrence.

134.    Defendant Richland County's actions and omissions, by and through its authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Mr. Brosia and actually and proximately contributed to and/or caused the severe injury sustained by Mr. Brosia.

135.    Mr. Brosia is entitled to Judgment against Defendant Richland County for damages as to be determined by the triers of fact in this case.

**<u>JURY DEMAND</u>**

**WHEREFORE**, Mr. Brosia demands a trial by jury and respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a.   Compensatory, actual, and consequential damages to Mr. Brosia;

    b.   Costs of this action and attorney's fees to Mr. Brosia for the civil rights causes of action under 42 U.S.C. § 1988;

    c.   Loss of past and future support and services with interest;

    d.   Loss of earnings and/or earning capacity;

    e.   Punitive damages; and

    f.   Such other and further relief as this Court may deem appropriate.

Respectfully submitted, this 25th day of November, 2024.

**STROM LAW FIRM, LLC**

*s/ Bakari T. Sellers*

Bakari T. Sellers (SC Fed. ID # 11099)
Mario A. Pacella (SC Fed. ID # 7538)
Amy E. Willbanks (SC Fed. ID # 13537)
Alexandra Benevento (SC Fed. ID # 10734)
Matthew B. Robins (SC Fed. ID # 13313)
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone: (803) 252-4800
Email: bsellers@stromlaw.com
       mpacella@stromlaw.com
       awillbanks@stromlaw.com
       abenevento@stromlaw.com
       mrobins@stromlaw.com

JOHNSON, TOAL & BATTISTE, P.A.

Chelsea Glover (SC Fed. ID #13104)
Luther Battiste (SC Fed ID#1242)
1615 Barnwell Street
Columbia, South Carolina 29201
Phone: (803) 252-9700
Email: chelsea@jtbpa.com
       bat@jtbpa.com

*Attorneys for Mr. Brosia*